MATTHEW CLAYTON MALONE,

      Plaintiff,

      v.                                     Case No. 23-C-714

JOSHUA HEIDER,

      Defendant.

## DECISION AND ORDER

Plaintiff Matthew Clayton Malone, who is representing himself, brought this 42 U.S.C. § 1983 action, alleging that Defendant Joshua Heider violated the Fourth Amendment by using excessive force during his January 24, 2023 arrest. Dkt. Nos. 1 & 16. On August 5, 2024, Defendant filed a motion for summary judgment. Dkt. No. 39. Because videotape evidence establishes that Defendant used a reasonable amount of force under the circumstances, the Court will grant the motion and dismiss this case.

### UNDISPUTED FACTS

At the relevant time, Plaintiff was a citizen in Shawano County, where Defendant Heider was a deputy sheriff. Dkt. No. 41, ¶1. The events giving rise to this lawsuit are captured on videotape. Dkt. Nos. 42-2 & 42-3.

On January 24, 2023, at around 2:46 a.m., Shawano County dispatch directed Deputy Heider to go to a private residence to resolve a disturbance. Dkt. No. 41, ¶5. The owner of the home wanted Plaintiff removed because he had threatened various individuals with a knife, had slapped his own uncle, and had refused to leave. *See* Dkt. No. 42-2 at 10:30 to 11:00. Dispatch informed Deputy Heider that Plaintiff was highly intoxicated, had been playing with weapons

inside the house, and had "a few open" criminal charges as well as "some felonies."  Dkt. No. 41, ¶¶6, 9-10.  Deputy Heider knocked on the door and the homeowner let him inside.  *Id*., ¶11.  The homeowner identified a person sitting in a chair in the front of the room as Plaintiff.  *Id*., ¶13.  Deputy Heider entered the house at about 3:02 a.m.  *See* Dkt. No. 42-2 at 5:33.  He was alone at the time.  *Id*.

Once inside the house, Deputy Heider asked Plaintiff if he had any weapons and Plaintiff refused to answer.  Dkt. No. 41, ¶14.  The homeowner reported that Plaintiff had "pulled out his knife and was whipping it around," so he had taken it away.  *Id*., ¶¶15-16.  Deputy Heider could see that Plaintiff was highly intoxicated, with slurred speech and incoherent mumbling, so he ordered Plaintiff to go outside at least three different times to avoid an altercation with the individuals who wanted him removed from the home.  *Id*., ¶¶17-23.  Plaintiff refused to get up from his chair and instead raised both of his fists in a fighter or "boxer's" position to show defiance to the order to go outside.  *Id*., ¶19.  Plaintiff admits that he put his fists up and refused to go outside because he was "minding my own business and wasn't going outside in the cold."  Dkt. No. 45, ¶¶17, 19.  Plaintiff states, "it [was] my right to ignore [Deputy Heider]."  *Id*., ¶20.

Plaintiff then picked up a large bottle of alcohol and raised it above his head.  Dkt. No. 41, ¶21.  Deputy Heider instructed Plaintiff not to drink from the bottle, and he said that Plaintiff was done drinking for the night at that house, but Plaintiff ignored him and immediately brought the bottle to his mouth.  *Id*., ¶24.  Given Plaintiff's highly intoxicated state, along with his non-compliant attitude, Deputy Heider was concerned that Plaintiff may use the large bottle as a weapon either against him or the other individuals in the home who wanted him removed.  *Id*., ¶27.  Deputy Heider directed Plaintiff to put his hands down and drop the bottle; and Plaintiff admits that he resisted both verbally and physically.  *Id*., ¶¶25-44; *see also* Dkt. No. 45, ¶¶ 25-44.  Plaintiff admits that, when Deputy Heider attempted to take the bottle away from him, he turned

2

away, stood up, and told Deputy Heider not to touch him. Dkt. No. 45, ¶¶25-26. He also admits that he immediately started yelling and pulling away from Deputy Heider while pushing Deputy Heider's hands away. *Id*., ¶¶28-29. Plaintiff admits that he raised a closed fist above his head while holding the large bottle in the other hand and that he kept one arm "tucked beside my left side with the bottle" to keep it away from Deputy Heider. *Id*., ¶¶30-32. Plaintiff claims that it was his right to drink, if he wanted to. *Id*., ¶¶25-44.

Deputy Heider eventually got a hold of Plaintiff's right wrist and guided him to the ground. Dkt. No. 41, ¶37. While on the ground, Deputy Heider gave Plaintiff at least 15 verbal orders to cooperate and allow himself to be handcuffed, but Plaintiff continued resisting by hitting, kicking, and swatting at Deputy Heider. *Id*., ¶¶37-44. At one point, Plaintiff attempted to hit Deputy Heider in the face, but he instead hit his chest, knocking his radio off. *Id*., ¶43. Deputy Heider warned Plaintiff to stop resisting or he would be tased; and Plaintiff responded, "You want to get done?" *Id*., ¶¶39-40. Plaintiff kicked at Heider and shouted, "You better get 'em, n****r. Fuck you. Fuck that bitch. You want to die?" *Id*., ¶¶48-49. Plaintiff told Deputy Heider that he was going to "mess him up" and then kicked at Deputy Heider again. *Id*., ¶¶50-51. Plaintiff refused to comply with Deputy Heider's orders to stop kicking, instead responding, "Shut the fuck up," and calling Deputy Heider a "bitch n****r." *Id*., ¶52. Plaintiff then rolled onto his back and continued kicking at Deputy Heider despite direct orders to stop. *Id*., ¶53. Deputy Heider eventually got Plaintiff in a face-down position on the ground without using his taser. *Id*., ¶54. Plaintiff continued to shout at Deputy Heider, "He's a killer. He's a white guy. Watch him. Hit him. Hit him. Hit him." *Id*., ¶55. Plaintiff admits to resisting in the manner described above, but he claims that he did so because Deputy Heider "was killing me" and he therefore was disoriented due to lack of air. Dkt. No. 45, ¶46.

3

Case 1:23-cv-00714-WCG     Filed 01/30/25     Page 3 of 8     Document 49

About ten minutes later, at around 3:12 a.m., a different deputy arrived to assist in transporting Plaintiff to the patrol car. *See* Dkt. No. 42-2 at 15:33. As the deputies escorted Plaintiff, he continued yelling at them and used his legs to try and trip them. Dkt. No. 41, ¶¶56-58. Once at the patrol car, the deputies attempted to search Plaintiff for weapons and contraband. *Id.*, ¶61. During this process, Plaintiff continued kicking at Deputy Heider. *Id.*, ¶¶63-74. At that point, due to Plaintiff's continued kicking and combative behavior, the deputies decided to secure him on the ground. *Id.*, ¶¶71-74. Deputy Heider performed a single, targeted "knee strike" on Plaintiff's upper left leg to gain control of him at around 3:13 a.m. Dkt. No. 42-3 at 17:11. A knee strike is a common use of force technique used to gain control of an individual who has maintained a level of counteractive or resistive behavior that has not been controlled by the officer's current level of force. Dkt. No. 41, ¶69. Deputy Heider used his left knee and upper shin to strike Plaintiff's upper left leg. *Id.*, ¶68. Once on the ground, the deputies saw that Plaintiff had urinated and defecated in his pants. *Id.*, ¶72. Other deputies then arrived and Plaintiff continued resisting efforts to get him into the patrol car. *Id.*, ¶¶75-80. Plaintiff spit at the officers twice and continued yelling at them. *See id*. The deputies eventually got Plaintiff in the patrol car. *Id.*, ¶80. Deputy Heider then took Plaintiff to the hospital, where he was medically cleared, and booked him into the county jail. *Id.*, ¶¶82-84.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of

4

the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Where a video recording exists, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

A claim that law enforcement used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010)). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id*. (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)). The factors a court addresses to determine whether an officer's action under the circumstances was reasonable include "the severity of the crime; whether the suspect posed an immediate threat to the officers or others; whether the suspect was resisting or evading arrest; whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Dawson*, 803 F.3d at 833. The court's ultimate goal in

5

examining these factors is to determine "whether the force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended." *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir.2011). "[I]f there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to 'second-guess' the officer's actions." *Dawson*, 803 F.3d at 833 (citing *Bell v. Irwin*, 3321 F.3d 637, 640 (7th Cir. 2003)).

Deputy Heider asserts that he is entitled to summary judgment because he only used the amount of force necessary to remove a drunk, physically combative, verbally abusive, and non-compliant Plaintiff from a home that Plaintiff refused to leave. Dkt. Nos. 40 & 46. Based on videotape evidence, the Court agrees that no reasonable jury could conclude that Deputy Heider used unreasonable force on Plaintiff on January 24, 2023. It is clear from videotape evidence that Plaintiff was highly intoxicated and refused to leave the home of an elderly man who did not want him there. Deputy Heider initially attempted to remove Plaintiff without any force—by only using words and *asking* him to voluntarily leave—but Plaintiff refused. Deputy Heider then attempted to use a small amount of force—grabbing Plaintiff's arms—to escort him out. In response, Plaintiff continued resisting by turning his body away, swatting at Deputy Heider's arms, lifting the liquor bottle like a weapon, chaotically kicking and attempting to squirm out of restraints, and spitting at Deputy Heider. The Court notes that someone inside the home makes comments acknowledging that Deputy Heider appeared to need assistance to restrain Plaintiff and that individual apologized for his inability to help due to his disability. *See* Dkt. No. 42-2 at 7:25. Other individuals inside the home also yelled at Plaintiff to "knock it off" and "stop fighting" numerous times throughout the incident. *Id*. at 8:55-12:00. Plaintiff continued resisting on his way to the patrol car, even after the second deputy arrived to assist Deputy Heider. Only after Plaintiff continued resisting for about 15 minutes did Deputy Heider strike Plaintiff in the upper

left leg with his knee in an effort to gain control over Plaintiff.  Dkt. No. 42-3 at 7:11.  Deputy Heider and the other officer who later arrived to assist him appear calm and professional the entire time despite Plaintiff's obscene-laced slurs and continued resistance.  No reasonable jury could conclude that Deputy Heider used excessive force at any time during the incident.  *See* Dkt. No. 42-3.

Plaintiff does not dispute most of what Deputy Heider proposed occurred.  *See* Dkt. No. 45.  His primary grievance appears to be the single targeted knee strike executed outside the home and in front of the patrol car.  He claims that this maneuver was so aggressive it caused him to urinate and defecate on himself.  *See* Dkt. No. 47.  Plaintiff asserts that it "shocks the conscience" that a police officer would "strike with such force" that it could cause urination and defecation.  *Id*. at 4.  Whether Deputy Heider's knee strike triggered Plaintiff's defecation and urination or not, the video displays a reasonably restrained use of force under the circumstances.  Given that Plaintiff was physically combative, verbally abusive, and generally non-compliant both inside the house and outside for over 15 minutes, the force used as shown on the video is reasonable under the circumstances.  To be sure, Deputy Heider would likely have even been justified in using the taser that he had threatened to use but ultimately did not.  *See Turner v. City of Champaign*, 979 F.3d 563, 569 (7th Cir. 2020) (noting that law enforcement officers are even permitted to use "significant force to subdue someone who is actively resisting lawful detention").

Plaintiff also asserts that he is entitled to ignore a police officer's order to go outside in the cold.  *See* Dkt. No. 45.  He argues that he can drink as much as he wants to and that police have no authority to order him to stop drinking or take his liquor bottle away.  *Id*.  While that might be true when he is at his own home and not otherwise causing a disturbance, the undisputed facts before the court are that police were called by a homeowner to remove an unruly and violent person who refused to leave when told to do so.  Dkt. No. 42-2 at 10:30 to 11:00.  Based on the undisputed

7

Case 1:23-cv-00714-WCG     Filed 01/30/25     Page 7 of 8     Document 49

evidence, Plaintiff had no right to remain in the home drinking, and Deputy Heider was entitled to use reasonable force to remove Plaintiff. Based on videotape evidence, no reasonable jury could find the force used was excessive. Deputy Heider is therefore entitled to summary judgment in his favor.

## CONCLUSION

For these reasons, Deputy Heider's motion for summary judgment (Dkt. No. 39) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of January, 2025.

William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.